UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
FORT MYERS DIVISION

STEVEN BRAUNSTEIN,

       Plaintiff,

v.                                    Case No:  2:19-cv-700-FtM-29MRM

MARSH   LANDING   COMMUNITY
ASSOCIATION AT ESTERO, INC.
and  TOWNE  PROPERTIES  ASSET
MANAGEMENT COMPANY,

       Defendants.

_____

**OPINION AND ORDER**

    This matter comes before the Court on the plaintiff's Motion for Partial Summary Judgment as to Liability Against Defendant Marsh Landing Community Association at Estero, Inc. as to Count IV Only (Doc. #71) filed on March 13, 2020.  Defendant filed a Response in Opposition to Motion (Doc. #83) on April 14, 2020, and with leave of court (Doc. #72), plaintiff filed a Reply (Doc. #84) on April 21, 2020.  For the reasons set forth below, the motion is denied.

**I.**

    The following material undisputed facts are established by the record:

    In May 2006, plaintiff Steven Braunstein (plaintiff or Braunstein) purchased a personal residence on Marsh Landing

Boulevard in Estero, Florida which is governed by the Marsh Landing Community Association at Estero, Inc. (Marsh Landing), a community association that collects periodic homeowners' association dues. Plaintiff incurred the obligation to pay periodic dues to Marsh Landing, and is alleged to have failed to pay some of the association dues (the Debt). The parties agree that the Debt is a "consumer debt" within the meaning of the relevant federal and Florida statutes.

Marsh Landing retained Alliance CAS to collect delinquent accounts for the Marsh Landing Community Association. Marsh Landing retained Towne Properties from 2016 through May 2019 to provide property management services to Marsh Landing, which included collection of association dues.

Plaintiff was sent three notices concerning his obligations to Marsh Landing.

- On May 24, 2018, Alliance CAS sent a Notice of Intent to Record a Claim of Lien (Doc. #49-4, Exh. D) on behalf of Marsh Landing "to effectuate the collection of [his] delinquent account." The total outstanding amount was $7,678.92. (Id.)

- On June 29, 2018, Towne Properties Asset Management Company sent a Notice of Intent to Remedy Violation (Doc. #49-7, Exh. G) on behalf of the Board of Directors of Marsh Landing, indicating that it was the

third correspondence regarding tree and stump removal, a fine was being assigned to plaintiff's account, and further fines were possible for the torn pool cage and debris.

- On July 25, 2018, Alliance CAS sent a Delinquent Assessment (Doc. #49-5, Exh. E) on behalf of Marsh Landing to notify plaintiff that a Claim of Lien had been filed against the property, and that interest had accrued.

By September 28, 2018, Alliance CAS retained Florida Community Law Group, P.L. (FCLG) as the law firm to represent Marsh Landing in a lawsuit to collect the Debt.  On September 28, 2018, FCLG filed a lawsuit on behalf of Marsh Landing against Braunstein to collect the Debt.  After receiving service of process, Braunstein retained The Dellutri Law Group, P.A. (DLG) as his attorney.  On February 28, 2019, DLG entered a Notice of Appearance in the case on Braunstein's behalf.  (Doc. #70-1, ¶¶ 9-11.)  The Notice of Appearance certifies that it was served upon an attorney at FCLG by either e-mail or U.S. mail on February 28, 2019.  (Doc. #49-11, Exh. K.)

Marsh Landing thereafter sent two letters directly to Braunstein at his home address.  A letter dated July 5, 2019, informed plaintiff that his rights to use common areas and facilities would be suspended pursuant to the applicable Florida

Statute.   The letter bears the letterhead for Marsh Landing, is addressed to plaintiff at his residence, and states:

> I am writing on behalf of the Board of Directors for the Marsh Landing Community Association to inform you that due to the delinquent nature of your account with regard to payment of fees to the Association, the suspension of your rights as allowed under the Florida State Statutes will be voted on at the meeting of the Board of Directors on June 23, 2019 at 10:00am.
>
> The statue is shown below. If your account is brought current before the date of this meeting the Board will remove not suspend your rights, so we encourage prompt attention to this matter, if you want to retain your rights provide under the Covenants of the community and the Florida Statute 720.

(Doc. #49-12, Exh. L.)   The letter then quotes what appears to be a portion of Florida Statute 720.   The letter is signed by the Property Manager "for the Board of Directors."

A letter dated July 24, 2019, from Marsh Landing informs plaintiff that suspension of his rights was approved by the Board of Directors and plaintiff's access to amenities, cable/internet, and scanner access to the gate will be shut off.   The letter bears the letterhead for Marsh Landing, is addressed to plaintiff at his residence, and states:

> I am writing on behalf of the Board of Directors for the Marsh Landing Community Association to inform you that due to the delinquent nature of your account with regard to payment of fees to the Association, the suspension of your rights as allowed under the

> Florida State Statutes was approved by the
> Board at the July 23, 2019 meeting.
>
> Your access to amenities, cable/internet, and
> scanner access to the gate have or will be
> shut off. You still can gain access to the
> community by use of your entry code at the
> gate call box.
>
> The statue is shown below. If your account is
> brought current, the Board will reinstate your
> rights, so we encourage prompt attention to
> this matter.

(Doc. #49-12, Exh. L.)   The letter quotes the same portion of the Florida Statute as the previous letter, and is signed by the Property Manager "for the Board of Directors."

Count IV of the Amended Complaint alleges a violation of the Florida Consumer Collection Practices Act (FCCPA). Specifically, Count IV alleges that "Marsh Landing violated Fla. Stat. § 559.72(18), which provides that a debt collector may not '[c]communicate with a debtor if the person knows that the debtor is represented by an attorney with respect to such debt and has knowledge of, or can readily ascertain, such attorney's' contact information." (Doc. #49, ¶ 70.)   The statute is alleged to have been violated "by sending correspondence directly to Mr. Braunstein in an attempt to collect the Debt, after being informed that Mr. Braunstein had retained counsel to represent him with regard to the Debt." (Doc. #49, ¶ 71.)   Exhibit K to the Amended Complaint includes a Notice of Appearance by counsel on February

28, 2019, in Lee County Circuit Court. (Doc. #49-11, Exh. K, p. 2.)

## II.

Plaintiff seeks partial summary judgment against Marsh Landing as to its liability for the violation alleged in Count IV. Defendant opposes the motion.

Summary judgment is appropriate only when the Court is satisfied that "there is no genuine dispute as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "An issue of fact is 'genuine' if the record taken as a whole could lead a rational trier of fact to find for the nonmoving party." Baby Buddies, Inc. v. Toys "R" Us, Inc., 611 F.3d 1308, 1314 (11th Cir. 2010). A fact is "material" if it may affect the outcome of the suit under governing law. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). "A court must decide 'whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law.'" Hickson Corp. v. N. Crossarm Co., Inc., 357 F.3d 1256, 1260 (11th Cir. 2004)(quoting Anderson, 477 U.S. at 251).

In ruling on a motion for summary judgment, the Court views all evidence and draws all reasonable inferences in favor of the non-moving party. Scott v. Harris, 550 U.S. 372, 380 (2007); Tana v. Dantanna's, 611 F.3d 767, 772 (11th Cir. 2010). However, "if

reasonable minds might differ on the inferences arising from undisputed facts, then the court should deny summary judgment." St. Charles Foods, Inc. v. America's Favorite Chicken Co., 198 F.3d 815, 819 (11th Cir. 1999)(quoting Warrior Tombigbee Transp. Co. v. M/V Nan Fung, 695 F.2d 1294, 1296-97 (11th Cir. 1983)(finding summary judgment "may be inappropriate even where the parties agree on the basic facts, but disagree about the factual inferences that should be drawn from these facts")). "If a reasonable fact finder evaluating the evidence could draw more than one inference from the facts, and if that inference introduces a genuine issue of material fact, then the court should not grant summary judgment." Allen v. Bd. of Pub. Educ., 495 F.3d 1306, 1315 (11th Cir. 2007).

### III.

The FCCPA provides that no person shall engage in certain practices while attempting to collect a consumer debt. Fla. Stat. § 559.72. The FCCPA prohibits acts of "persons" and is not limited to "debt collectors." Deutsche Bank Nat. Tr. Co. v. Foxx, 971 F. Supp. 2d 1106, 1114 (M.D. Fla. 2013). To recover under the FCCPA, a plaintiff must first show that the money being collected qualifies as a "consumer debt." Agrelo v. Affinity Mgmt. Servs., LLC, 841 F.3d 944, 950 (11th Cir. 2016). The FCCPA defines "debt" or "consumer debt" as:

> any obligation or alleged obligation of a
> consumer to pay money arising out of a
> transaction in which the money, property,
> insurance, or services which are the subject
> of the transaction are primarily for personal,
> family, or household purposes, whether or not
> such obligation has been reduced to judgment.

Fla. Stat. § 559.55(6).  The parties agree that the Debt in this case is a "consumer debt" within the meaning of the FCCPA.

The relevant portion of the FCCPA provides that in the collection of consumer debts no person shall:

> (18) Communicate with a debtor if the person
> knows that the debtor is represented by an
> attorney with respect to such debt and has
> knowledge of, or can readily ascertain, such
> attorney's name and address, unless the
> debtor's attorney fails to respond within 30
> days to a communication from the person,
> unless the debtor's attorney consents to a
> direct communication with the debtor, or
> unless the debtor initiates the communication.

Fla. Stat. § 559.72(18).  To establish a claim under this portion of the statute, plaintiff must show that Marsh Landing (1) communicated with a consumer; (2) in connection with the collection of a debt; (3) with actual knowledge that the consumer is represented by an attorney with respect to such debt; and (4) with knowledge, or the ability to readily ascertain, the attorney's name or address.  Castellanos v. Portfolio Recovery Assocs., LLC, 297 F. Supp. 3d 1301, 1310 (S.D. Fla. 2017).

Marsh Landing argues that plaintiff is not entitled to summary judgment for two reasons:  First, Marsh Landing asserts there is

a genuine issue of material fact as to whether the two letters were communications which attempted to collect the Debt.  Second, Marsh Landing asserts there is a genuine issue of material fact as to whether it had actual knowledge at the time the letters were sent that Braunstein was represented by an attorney with respect to the Debt.[1]

### A. Communication Relating To Debt Collection

Marsh Landing asserts that the two July 2019 letters are not communications within the meaning of the FCCPA because "only communications made in an attempt to collect a debt are subject to the FCCPA." (Doc. #83, p. 5.)  The letters, Marsh Landing argues, were "merely to communicate information to the Plaintiff, as mandated by Chapter 720 of the Florida Statutes." (Id. at 6.)

"FCCPA § 559.72(18) prohibits any person, in collecting consumer debts, to communicate with a debtor if that person knows that the debtor is represented by an attorney 'with respect to such debt[.]' Fla. Stat. § 559.72(18)." Medley v. Dish Network, LLC, 18-13841, 2020 WL 2092594, at *4 (11th Cir. May 1, 2020). "'Communication' means the conveying of information regarding a debt directly or indirectly to any person through any medium." Fla. Stat. § 559.55(2).  "For there to be a violation, the

---

[1] Since the Court concludes summary judgment is not appropriate, the Court need not reach the third issue relating to defendant's asserted affirmative defenses.

communication must be in relation to the collection of a debt."
Daley v. Bono, 420 F. Supp. 3d 1247, 1257 (M.D. Fla. 2019),

Interpreting identical language from the Federal Debt
Collection Practices Act (FDCPA), 15 U.S.C. § 1692a(2), the
Eleventh Circuit noted "that the definition of communication is
very broad."  Caceres v. McCalla Raymer, LLC, 755 F.3d 1299, 1302
(11th Cir. 2014).  In Reese v. Ellis, Painter, Ratterree & Adams,
LLP, 678 F.3d 1211, 1218 (11th Cir. 2012), the Eleventh Circuit
adopted the Second Circuit's reasoning "that if a communication
conveys information about a debt and its aim is at least in part
to induce the debtor to pay, it falls within the scope of the Act."
Caceres, LLC, 755 F.3d at 1302.  Thus, a dual purpose communication
providing both notice and seeking to induce payment of a debt can
be a "communication" within the meaning of both the FCCPA and the
FDCPA.  Reese, 678 F.3d at 1211 ("The fact that the letter and
documents relate to the enforcement of a security interest does
not prevent them from also relating to the collection of a debt
within the meaning of § 1692e.")

The Eleventh Circuit employs the "least-sophisticated
consumer" standard to evaluate whether a debt collector's
communication violates § 1692e of the FDCPA, and not the
"reasonable consumer" standard.  LeBlanc v. Unifund CCR Partners,
601 F.3d 1185, 1193–94 (11th Cir. 2010); Jeter v. Credit Bureau,
Inc., 760 F.2d 1168, 1179 (11th Cir. 1985).  "In the summary

judgment context, the burden of persuasion is on [plaintiff] to prove that no reasonable jury, viewing the letter through the eyes of a "least-sophisticated consumer," and making all reasonable inferences in defendant's favor, could find that the letter was merely informative as opposed to" an attempt to collect a debt. LeBlanc, 601 F.3d at 1195.

When determining whether a communication is in connection with the collection of any debt, the Court "looks at the language of the communication in question, specifically to statements that demand payment or note that additional fees will be assessed if payment is not received." Owens-Benniefield v. BSI Fin. Servs., 19-13962, 2020 WL 1527721, at *2 (11th Cir. Mar. 31, 2020) (citing Caceres v. McCalla Raymer, LLC, 755 F.3d 1299, 1302-03 (11th Cir. 2014)).

Both letters provide information, but also could be construed as an effort to collect a debt.  The July 5, 2019 letter notifies plaintiff that "due to the delinquent nature of your account with regard to payment of fees to the Association," the suspension of his rights is being scheduled for a vote by the Board of Directors. (Doc. #49-12, Exh. L.)  The letter continues that "[i]f your account is brought current before the date" of the Board meeting, the Board would not suspend his rights.  The letter concludes by "encourage[ing] prompt attention to this matter."  Id.

The July 25, 2019 letter notifies plaintiff that "due to the delinquent nature of your account with regard to payment of fees to the Association," the suspension of his rights was approved at the Board meeting.  The letter concludes that "[i]f your account is brought current, the Board will reinstate your rights, so we encourage prompt attention to this matter."  (Doc. #49-12, Exh. L.)  The letter also attaches of the outstanding amounts owed.

A reasonable trier of fact could find that a least sophisticated consumer would find the letter to be a debt collection communication.  On the other hand, given the language of the letters, the same reasonable trier of fact could find that a least sophisticated consumer would not find the letter to be a debt collection communication, but simply a statutory notice. Therefore, summary judgment is not appropriate on this issue.

## B. Knowledge of Representation by Counsel

"The FCCPA's use of the word "knows" mandates proof of actual knowledge of the impropriety." Bacelli v. MFP, Inc., 729 F. Supp. 2d 1328, 1343 (M.D. Fla. 2010) (citing In re Lamb, 409 B.R. 534, 541 (Bankr. N.D. Fla. 2009)).  "Courts construing this language have held that the knowledge addressed by the statutes is 'actual' knowledge, not constructive knowledge of the lawyer's presence." Anderson v. St. Joseph's Hosp., Inc., No. 8:12-CV-1843-T-35TGW, 2014 WL 12586055, at *4 (M.D. Fla. May 12, 2014) (citing Schmitt v. FMA Alliance, 398 F.3d 995, 997 (8th Cir. 2005) ("[A] plaintiff

must plead actual knowledge under the FDCPA in order to state a claim upon which relief may be granted."); <u>Bacelli v. MFP, Inc.</u>, 729 F. Supp. 2d 1328 (M.D. Fla. 2011).

Plaintiff hired The Dellutri Law Group, P.A. as his attorney in defense of the lawsuit which was attempting to collect the Debt. Plaintiff's law firm filed a Notice of Appearance in the state case, and forwarded a copy to the law firm representing Marsh Landing in the lawsuit.   There is no contention that Marsh Landing's attorney did not know Braunstein was represented by an attorney as of February 28, 2019.   Marsh Landing asserts, however, that <u>it</u> did not know of the representation by counsel until it was served with this action on October 2, 2019.   (Doc. #83-3, ¶ 29.)

The question of whether Marsh Landing can be vicariously liable for FCCPA violations of its agents is one of Florida law. <u>Agrelo</u>, 841 F.3d at 953.   Under Florida law, the knowledge of the agent is imputable to the principal whether disclosed or not, and the principal will be bound by such knowledge.   <u>Johnson v. Life Ins. Co. of Ga.</u>, 52 So. 2d 813, 815 (Fla. 1951).   "It is axiomatic that knowledge of the agent constitutes knowledge of the principal as long as the agent received such knowledge while acting within the scope of his authority."   <u>Ruotal Corp., N.W., Inc. v. Ottati</u>, 391 So.2d 308, 309 (Fla. 4th DCA 1980).

Under Florida law, the knowledge of the law firm representing Marsh Landing in the lawsuit to collect the Debt is imputed to

Marsh Landing.  As stated in <u>Lipsig v. Ramlawi</u>, 760 So.2d 170, 186 (Fla. 3d DCA 2000), "[p]rofessionals, such as lawyers and accountants are always agents of their clients." <u>See also</u> Fla. R. Admin. P. 2.505(h) (providing "Attorney as Agent of Client. In all matters concerning the prosecution or defense of any proceeding in the court, the attorney of record shall be the agent of the client, and any notice by or to the attorney or act by the attorney in the proceeding shall be accepted as the act of or notice to the client").  This is so even if the attorney fails to inform the client of the facts.  <u>Brooks Tropicals, Inc. v. Acosta</u>, 959 So. 2d 288, 295 (Fla. 3d DCA 2007).  "It is a well-settled principle of law that an attorney acting within the scope of his authority represents his client and his acts of omission as well as commission are to be regarded as the acts of the person he represents, and therefore his neglect is equivalent to the neglect of the client himself."  <u>Griffith v. Inv. Co.</u>, 92 Fla. 781, 783, 110 So. 271, 271 (Fla. 1926).

Here, it is not disputed that the law firm representing Marsh Landing received notice that plaintiff was represented by counsel in connection with efforts to collect the Debt as of February 28, 2019.  This information is imputed to Marsh Landing under Florida law.  Accordingly, while summary judgment on the knowledge issue would be appropriate, that in itself would not result in summary judgment as to liability for Count IV.

14

Accordingly, it is now

**ORDERED:**

Defendant's Motion for Partial Summary Judgment (Doc. #71) is **DENIED** as to liability in Count IV.

**DONE AND ORDERED** at Fort Myers, Florida, this __11th__ day of May, 2020.

_____
JOHN E. STEELE
SENIOR UNITED STATES DISTRICT JUDGE

Copies:
Counsel of record